**MABIN CONSTRUCTION COMPANY, INC., Respondent,**

v.

**HISTORIC CONSTRUCTORS, INC., et al., Appellants.**

**No. WD 46790.**

Missouri Court of Appeals, Western District.

April 13, 1993.

Lawrence J. Zimmerman, Kansas City, for appellants.

Ronald K. Barker, Kansas City, for respondent.

Before SMART, P.J., and KENNEDY and FENNER, JJ.

FENNER, Judge.

Appellants, Historic Constructors, Inc. (Historic), Roger E. Buford, Benjamin F. Bolt, and Deborah A. Bolt (hereinafter collectively known as Individual Defendants), appeal the Amended Judgment entered by the Circuit Court of Jackson County at Kansas City on August 27, 1992. The judgment awarded breach of contract dam-

ages to respondent, Mabin Construction Co., Inc. (Mabin), a subcontractor for the construction project described herein.

The record reflects that on August 2, 1989, Mabin and Historic entered into a written subcontract agreement wherein Mabin agreed to perform and complete parking lot paving and paint striping work for the project known as the Old Spaghetti Factory located at 302–306 West 8th Street in Kansas City, Missouri. In exchange for the work, labor, and materials furnished by Mabin for this project, Historic, the general contractor, was to pay Mabin $8,325.00.[1] It is uncontroverted that Mabin performed its agreement and substantially completed all the work under its contract with Historic. It is also uncontroverted that Historic failed to pay the contract sum of $8,325.00 or any part of it to Mabin. The record further shows that despite Mabin's demands for payment from Historic, Historic failed to pay Mabin for its work.

On June 6, 1991, Mabin filed a Petition alleging four separate counts arising out of Historic's failure to pay Mabin for its work, labor, and materials furnished with regard to the Old Spaghetti Factory project.[2] On September 4, 1991, Mabin filed a First Amended Petition which, except for its addition of the three Individual Defendants as the last officers and directors, or statutory trustees, of Historic, restated the allegations of the original Petition. It also alleged that Historic had been administratively dissolved by the Missouri Secretary of State on May 13, 1991, for its failure to pay its franchise tax.

On November 4, 1991, Historic filed a Motion To Dismiss Mabin's First Amended Petition, alleging that the court lacked subject matter jurisdiction and that Mabin failed to state a claim against the Individual Defendants who are improper parties. The allegation that the court lacked subject matter jurisdiction was based on an equitable mechanic's lien suit filed on May 22, 1990 by SKC Electric, Inc. (SKC), an electrical subcontractor involved in the same Old Spaghetti Factory project. Mabin was not made a party to this action. In its Motion To Dismiss, Historic argued that this equitable mechanic's lien suit, which was filed before the instant suit, rendered the instant suit a nullity and, thus, the court was without jurisdiction to entertain the instant suit. The court, however, overruled the Motion To Dismiss on February 4, 1992.

On July 28, 1992, the case was scheduled for trial, but Historic failed to appear and judgment was entered in favor of Mabin and against Historic and the Individual Defendants in the amount of $8,325.00, together with interest from and after September 30, 1989, and the costs of the action. The judgment was amended on August 27, 1992 to show that it was against Historic and each Individual Defendant *in his or her representative capacity as a last officer and director of Historic*, rather than against the Individual Defendants personally, as reflected in the original judgment.[3]

■ In their first point on appeal, Historic and the Individual Defendants argue that the court erred in entering judgment for Mabin because the court lacked subject matter jurisdiction to entertain a suit for contract damages arising in connection with a construction project which was the subject of a prior equitable mechanic's lien action.

---

1. The record reflects that the subcontract agreement was changed twice. Originally the contract price was $7,640.00. However, on August 9, 1989, Mabin and Historic agreed to a change which reduced the contract price to $7,450.00. Then on August 25, 1989, Historic authorized Mabin to perform certain additional work which increased the contract price to $8,325.00. This $8,325.00 is the amount that the parties agree is due and owing.

2. The four counts were for breach of contract (Count I), an open account (Count II), an ac-

count stated (Count III), and quantum meruit (Count IV), alternative theories of recovery.

3. The amended judgment was entered pursuant to Historic's Motion to Vacate or Amend Judgment, filed on August 12, 1992. In this motion, Historic argued, among other things, that the personal judgment rendered against the Individual Defendants in the July 28 judgment must be vacated because Mabin did not name or sue the Individual Defendants in their individual capacities, but rather in their capacities as last officers and directors of Historic.

Section 429.290, RSMo 1986,[4] provides that after an equitable mechanic's lien action is commenced, this action is exclusive of other remedies *for the enforcement of mechanics' liens.* Section 429.300 states, in pertinent part:

The equitable action ... shall be brought in the proper court of record regardless of the amount claimed by the plaintiff or plaintiffs in such action, *and all other suits that may have been brought on any mechanic's lien claim or demand shall be stayed and no further prosecuted, and the parties in any such other suit shall be made parties to such equitable action ...,* and any costs rightfully accrued in behalf of any lien claimant in any such other action shall be and become a part of the lien claim of such party. *After the institution of such equitable action no separate suit shall be brought upon any mechanic's lien or claim against said property, or any of it, but the rights of all persons shall be adjusted, adjudicated and enforced in such equitable suit* (emphasis added).

Under section 429.280, all parties *claiming an interest in the real estate involved in the equitable action,* as disclosed by public records, shall be made parties to the action and those whose rights are not so disclosed are bound by the proceedings therein, but upon application may be made parties to the action and participate in the further adjudication of the claims.

■ A fundamental rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words used in their plain and ordinary meaning. *State ex rel. Osborne v. Goeke,* 806 S.W.2d 670, 672 (Mo. banc 1991). The first source in determining legislative intent is to examine the words used in the statute, but a proper analysis also considers the context in which the words are used and, importantly, the problem the legislature sought to address with the statute's enactment. *Fowler v. Director of*

*Revenue,* 823 S.W.2d 134, 135 (Mo.App. 1992).

■ The plain intent of the equitable mechanic's lien act is that all persons who have filed liens must be made parties to any equitable action when it is commenced and should be served with summons promptly so that there will be no need for them to begin any suit themselves or do anything to preserve their liens except plead at the proper time in the equitable action. *State ex rel. Erbs v. Oliver,* 361 Mo. 836, 237 S.W.2d 128, 131 (Mo. banc 1951). The equitable mechanic's lien action, established and governed by statute, is designed primarily for the purpose of enforcing multiple mechanics' lien claims filed against the same real estate, together with an adjudication of the rights claimed under all conflicting liens, encumbrances or other interests in the property. *Dierks & Sons Lumber Co. v. McSorley,* 289 S.W.2d 164, 168 (Mo.App.1956). When such an action is commenced, it preempts the field of remedies for the enforcement of mechanics' liens on the property. *Id.*

■ It has been repeatedly held that a non-mechanic's lien claimant may assert a personal action for breach of contract without resort to the protection afforded by the mechanic's lien statute. *State ex rel. Power Process Piping, Inc. v. Dalton,* 681 S.W.2d 514, 517 (Mo.App.1984). In *Dalton,* the court rejected counsel's argument that the equitable mechanic's lien statute preempts non-lien suits once a mechanic's lien suit is filed by any claimant under the mechanic's lien statute. *Id.* at 516. The court stated:

We do not accept the view that the legislature intended by enactment of the mechanic's lien statute to abrogate common law contract actions on construction contracts where a claimant, not a party to the contract, brings a mechanic's lien suit asserting a claim with regard to the same construction project. We do not believe that the [equitable mechanic's lien suit] was intended by the legislature to become a shield for the property owner against other laborers, materialmen,

4. All statutory references are to RSMo 1986, unless otherwise noted.

or contractors on the construction project who elected not to avail themselves of the mechanic's lien statute.... Had the legislature intended such a radical result they would have expressly so provided. *Id.* at 517.[5] The *Dalton* court's statement, which is consistent with the plain language and intent of the mechanic's lien statute, indicates that it is proper for a claimant who has elected not to avail himself of the mechanic's lien statute to bring a contract claim on the same construction project that is the subject of a separate equitable mechanic's lien suit.

Appellants rely on two cases to support their first point, both of which are either distinguishable or fail to address the precise issue as in the case at bar. The first case, *State ex rel. Great Lakes Steel Corp. v. Sartorius*, 249 S.W.2d 853, 855–56 (Mo. banc 1952), held that a breach of contract suit filed after an equitable mechanic's lien suit could not be maintained where the causes arose out of the same construction project and that, because the contract suit was a nullity, the court did not have jurisdiction to entertain the suit. *Sartorius*, however, involved a claimant who had filed a notice of lien prior to the institution of the equitable lien suit and was a named party in the equitable lien suit. The statutory language clearly applies to this type of claimant who has asserted an interest in the property, *i.e.*, by filing a notice of lien.

The second case that appellants rely on is *State ex rel. Kirkwood Excavating, Inc. v. Stussie*, 689 S.W.2d 131 (Mo.App.1985). In *Stussie*, relators sought to prohibit the respondent judge from dismissing their contract petition and from denying their motion to consolidate their contract action into a pending mechanic's lien action. *Id.* at 131. The breach of contract suit filed by relators arose out of the same construction project as the previously filed equitable mechanic's lien suit. *Id.* at 133. The court stated:

The supreme court has ruled that equitable mechanic's lien suits once filed are the exclusive remedy in all disputes, whether based on contract only or on a lien claim, when the disputes are between parties involved in the same construction project from which the mechanic's lien suit arises. *State ex rel. Clayton Green's Nursing Center, Inc. v. Marsh*, 634 S.W.2d 462, 465 (Mo. banc 1982). A breach of contract suit arising out of a construction project cannot be maintained and the proceedings must be stayed if an equitable mechanic's lien action has been filed relating to the same project. This holds true whether the breach of contract action was filed before or after the mechanic's lien suit was filed.

*Stussie*, 689 S.W.2d at 133. The court further stated that the supreme court in *Marsh* interpreted the mechanic's lien statute, section 429.300, to mean that a contractor on a construction project cannot recover in a breach of contract suit if a mechanic's lien suit is filed by a different entity which did work on the same job, unless the breach of contract suit is joined with the mechanic's lien suit. *Id.* at 133. The *Stussie* court ultimately held that the writ of mandamus is made absolute and that relators must be allowed to consolidate their contract action into the settled but as yet non-dismissed equitable mechanic's lien suit. *Id.* at 134. As part of its rationale, the court stated, "[u]nless the preliminary writ of mandamus is made absolute here, relators will be left without a remedy. They would be prohibited from

5. The *Dalton* court actually held that the relators had an absolute right to intervene and litigate their breach of contract claims in the equitable mechanic's lien suit, which was the only available forum under the circumstances of the case. In a footnote at the end of the case, the court noted, "We do not decide that contract claims on a single project are barred absent intervention. Questions of separate contract suits where the claimant is not informed of the lien suit or where the lien suit has terminated before the contract suit is filed or where the property owner does not seek dismissal of the contract suit are not raised in this writ proceeding." *Dalton*, 681 S.W.2d at 518 n. 2. Thus, while the *Dalton* case is not precisely on point, the court's language cited in this opinion is persuasive and consistent with the more powerful principles of statutory construction and legislative intent which this court relies on in reaching its decision.

ever litigating their cause of action. Such a result would be inequitable and should not be permitted." *Id.* at 133.

The *Stussie* court did not address the specific issue in the case at bar, that is, whether a claimant who elects not to avail himself of the mechanic's lien statute can sue for common law breach of contract without being barred by a related equitable mechanic's lien suit to which he was not made a party. The rationale in *Stussie* suggests that it would be inequitable to prohibit a non-lien claimant, who has not been made a party to the equitable mechanic's lien suit, from bringing a separate breach of contract action to obtain a remedy.

The concurring opinion in *Stussie* acknowledged the precise intent behind the mechanic's lien statute in stating:

> There is a basis for assuring that interests against the same real estate be adjudicated in one action thereby avoiding inconsistent judgments or promoting a race to foreclose. It is difficult for me to see a comparable value in forcing claimants who assert no claim to an interest in the real estate into the law suit.

*Id.* at 135. This notion is explicitly reflected in the plain language of the equitable mechanic's lien statute, which states, "[a]fter the institution of such equitable action no separate suit shall be brought *upon any mechanic's lien or claim against said property....*," section 429.-300 (emphasis added), and "[a]ll persons *claiming any lien or encumbrance upon, and all persons having any rights in or against ... said property to be affected* ... shall be made parties to said action...." Section 429.280.1 (emphasis added). Such language reflects that the statute applies only to claimants asserting an interest in the real estate.

Mabin brought an action at law for breach of contract against Historic and the Individual Defendants. Even though SKC brought a mechanic's lien suit asserting a claim with regard to the same construction project, Mabin was not a party to this suit and, by bringing its own breach of contract action, apparently elected not to avail itself of the mechanic's lien statute. Thus, Mabin was not a lien claimant and the provisions of the equitable mechanic's lien statute did not apply to Mabin.

Each provision in the equitable mechanic's lien statute contains language that emphasizes the statute's application to lien claimants only, or to persons claiming an interest in the property. This is illustrated by the emphasis provided in the statutory language cited above. Furthermore, the legislative intent behind the statute reinforces this interpretation because it provides that the intent of the equitable mechanic's lien statute is to make all persons *who have filed liens on the property* parties to the equitable action so that all of the mechanics' liens on the property can be enforced in one action. Mabin is not claiming an interest in the real estate and, thus, must not be barred by the equitable mechanic's lien suit previously filed by SKC.

■ The statutory language and legislative intent behind the mechanic's lien statute dictate a finding that a claimant, not made a party to a related equitable mechanic's lien action, who does not avail itself of the mechanic's lien statute and elects, instead, to bring a common law breach of contract action to recover damages is not barred from bringing such action by the provisions of the equitable mechanic's lien statute. Such breach of contract action is not abrogated by a prior equitable mechanic's lien action filed by another subcontractor to the same construction project. The trial court did not lack subject matter jurisdiction over the contract action brought by Mabin.

Appellant's first point is denied.

■ In their second point on appeal, appellants argue that it was improper to name statutory trustees in a lawsuit against an administratively dissolved corporation and, thus, the trial court erred in entering judgment against the Individual Defendants in their capacities as statutory trustees of Historic.

We agree. Section 351.525, which was repealed effective May 29, 1991, stated, in pertinent part:

> If any corporation ... fails to ... pay its franchise tax ... within ninety days af-

ter the time therein required ... the corporate rights and privileges of the corporation shall be forfeited ... and the directors and officers in office when the forfeiture occurs shall be the trustees of the corporation, who shall have full authority to wind up its business and affairs, sell and liquidate its property and assets, pay its debts and obligations and to distribute the net assets among the shareholders; and the trustees as such shall have the power to sue for and recover the debts and property due the corporation, describing it by its corporate name, and may be sued as such; and the trustees shall be jointly and severally responsible to the creditors and shareholders of the corporation to the extent of its property and effects that shall have come into their hands.

Section 351.486, RSMo Supp.1992, which was enacted in 1990, states, in pertinent part:

3. *A corporation administratively dissolved continues its corporate existence* but may not carry on any business except that necessary to wind up and liquidate its business and affairs ... and notify claimants ...

4. The administrative dissolution of a corporation does not terminate the authority of its registered agent. (emphasis added)

Section 351.476, RSMo Supp.1992, enacted in 1990, also provides, in relevant part, that a dissolved corporation continues its corporate existence and that dissolution of a corporation does not terminate the authority of the registered agent. In addition, it states that dissolution of a corporation does not prevent commencement of a proceeding by or against the corporation in its corporate name. Section 351.476.2(5), RSMo Supp.1992.

This new statutory scheme, coupled with the repeal of section 351.525, reflect the legislature's intent of precluding statutory trustees from being brought into suits against an administratively dissolved corporation. The provisions of the new statuto-

ry scheme clearly show that the administratively dissolved corporation continues its corporate existence and can be sued in its corporate name by serving the registered agent.

We find that the trial court erred in entering judgment against the Individual Defendants solely on the basis of their status as statutory trustees of Historic. Judgment was only proper against Historic, the administratively dissolved corporation that, under the new statutory scheme, was properly sued in its corporate name.[6]

The judgment is affirmed as to the court's proper exercise of its jurisdiction in entertaining the suit for contract damages brought by Mabin against Historic with regard to the Old Spaghetti Factory project. The judgment is reversed as to its imposition of liability against the Individual Defendants as statutory trustees of an administratively dissolved corporation. Accordingly, the cause is remanded for the trial court to modify its judgment to impose liability against Historic rather than the Individual Defendants.

All concur.

---

6. There was no evidence to show that the statutory trustees had any corporate assets in their possession or any liability other than by virtue of their position as statutory trustees. The question of misappropriation of assets by statutory trustees is not in question in the case at bar and, therefore, is not addressed in this opinion.