**DUNN INDUSTRIAL GROUP, INC., Dunn Industries, Inc., Respondents,**

v.

**CITY OF SUGAR CREEK, Missouri, et al., Defendants,**

**LAFARGE CORPORATION, et al., Appellants.**

No. SC 85024.

Supreme Court of Missouri, En Banc.

Aug. 26, 2003.

Christopher J. Daus, Andrew W. Manuel, St. Louis, Kirk T. May, William D. Beil, Jerome T. Wolf, J. Bradley Leitch, Brian W. Fields, Kansas City, for Appellant.

Roy Bash, G. Edgar James, Kansas City, for Respondent.

PER CURIAM.[1]

Lafarge Corporation and the city of Sugar Creek, Missouri, executed a lease agreement in October 1998. Lafarge con-

---

1. This Court transferred this case after an opinion by the Court of Appeals, Western District, authored by the Honorable Robert G. Ulrich. *Mo. Const. article V, section 10.* Portions of the court of appeals opinion are incorporated without further attribution.

tracted with Dunn Industrial Group, Inc. (DIG) for the design and construction of a new cement plant, known as the Sugar Creek II Cement Plant. Lafarge and DIG agreed to design and build the cement plant. Dunn Industries, Inc. (Dunn), DIG's parent company, signed a contract guaranty guaranteeing DIG's performance of its obligations under the construction contract with Lafarge. The construction contract between Lafarge and DIG contained an arbitration clause. The parties agreed to an October 4, 2000, change order.

Disputes arose, and litigation followed. In March 2001, DIG filed three separate mechanic's lien claims against the property. Shortly thereafter, DIG filed its petition against Lafarge and the city of Sugar Creek, which included counts to foreclose its mechanic's lien claims. Kansas City Electrical Supply Company then filed an equitable mechanic's lien action in Jackson County Circuit Court concerning the same property on June 4. Upon a joint motion by the parties, the trial court properly consolidated the case filed by DIG with the equitable mechanic's lien action under section 429.300.[2] Lafarge sought arbitration and filed a motion to stay litigation and compel arbitration. Dunn and DIG sought to stay arbitration. The trial court overruled Lafarge's motion to compel arbitration, sustained Dunn and DIG's joint motion to stay arbitration, and overruled Lafarge's motion to stay litigation.

The appeal of that portion of the judgment overruling the motion to stay litigation is dismissed as moot. Otherwise, the judgment is affirmed in part and reversed in part, and the case is remanded.

### Jurisdiction to Appeal Orders Denying or Staying Arbitration

■ Lafarge appeals the trial court's judgment denying its motion to compel arbitration and granting Dunn and DIG's joint motion to stay arbitration. It also appeals the trial court's overruling of its motion to stay litigation.

■ The right to appeal is purely statutory, and where a statute does not give a right to appeal, no right exists. *Farinella v. Croft,* 922 S.W.2d 755, 756 (Mo. banc 1996). Section 435.400.1, a part of the Missouri Uniform Arbitration Act, expressly grants the right to appeal orders denying an application to compel arbitration or granting an order to stay arbitration.

### Arbitrability of Claims Raised in DIG's Petition Against Lafarge

Lafarge claims that the trial court erred in denying its motion to compel arbitration because: (1) all of the disputes and claims asserted by DIG fall within the scope of the broad, mandatory arbitration provision of the construction contract; (2) the parties' October change order did not modify, rescind, or otherwise change the arbitration provision of the construction contract; and (3) enforcement of the arbitration provision is not barred by Missouri's equitable mechanic's lien statutes.

### Arbitration Provision of Construction Contract

■ The Federal Arbitration Act (FAA) evinces a liberal policy favoring arbitration agreements so that disputes might be resolved without resort to the courts. *Greenwood v. Sherfield,* 895 S.W.2d 169, 173 (Mo.App.1995). Before a party may be compelled to arbitrate under the FAA, a court must determine whether a valid agreement to arbitrate exists between the parties and whether the specific

**2.** All statutory references are to RSMo 2000 unless otherwise indicated.

dispute falls within the substantive scope of that agreement. *Houlihan v. Offerman & Co., Inc.,* 31 F.3d 692, 694–95 (8th Cir. 1994). A court must compel arbitration if it determines that the parties agreed to arbitrate the dispute. *Id.* at 695.

The usual rules and canons of contract interpretation govern the subsistence and validity of an arbitration clause. *Village of Cairo v. Bodine Contracting Co.,* 685 S.W.2d 253, 258 (Mo.App.1985). Whether a dispute is covered by an arbitration provision is relegated to the courts as a question of law. *Drake Bakeries, Inc. v. Local 50,* 370 U.S. 254, 256, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962). An appellate court's review of the arbitrability of a dispute is de novo. *Fru–Con Constr. Co. v. Southwestern Redevelopment Corp. II,* 908 S.W.2d 741, 743–44 (Mo.App.1995).

In construing arbitration clauses, courts have categorized such clauses as "broad" or "narrow." *McCarney v. Nearing, Staats, Prelogar & Jones,* 866 S.W.2d 881, 889 (Mo.App.1993). A broad arbitration provision covers all disputes arising out of a contract to arbitrate; a narrow provision limits arbitration to specific types of disputes. *Id.*

The June 1999 construction contract between Lafarge and DIG contained a broad arbitration clause:

> Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

All of the claims in DIG's petition arise out of or relate to the construction contract. The counts involve allegations of extra work or additions or changes to DIG's scope of work under the construction contract. The underlying claims sought to be enforced by mechanic's lien also arise out of the parties' construction contract. Resolution of DIG's claims requires an examination of Lafarge and DIG's respective obligations and performance under the construction contract. DIG's claims against Lafarge fall within the substantive scope of the parties' arbitration agreement.

### October Change Order

DIG concedes that the original construction contract between it and Lafarge contained an arbitration agreement. The parties dispute the effect of the October 2000 change order.

The cardinal principle of contract interpretation is to ascertain the intention of the parties and to give effect to that intent. *Butler v. Mitchell–Hugeback, Inc.,* 895 S.W.2d 15, 21 (Mo. banc 1995). The terms of a contract are read as a whole to determine the intention of the parties and are given their plain, ordinary, and usual meaning. *Id.; City of Harrisonville v. Public Water Supply Dist. No. 9 of Cass County,* 49 S.W.3d 225, 231 (Mo.App.2001). Additionally, each term of a contract is construed to avoid rendering other terms meaningless. *City of Harrisonville,* 49 S.W.3d at 231. A construction that attributes a reasonable meaning to all the provisions of the agreement is preferred to one that leaves some of the provisions without function or sense. *Id.*

A contract is ambiguous only if its terms are susceptible to fair and honest differences. *Helterbrand,* 48 S.W.3d at 658. A contract is not ambiguous merely because the parties disagree as to its construction. *Id.* Where the language of a contract is unambiguous, the intent of the parties is to be gathered from the contract

alone, and a court will not resort to construction where the intent of the parties is expressed in clear, unambiguous language. *City of Harrisonville*, 49 S.W.3d at 230. Extrinsic evidence may not be introduced to vary or contradict the terms of an unambiguous agreement or to create an ambiguity. *Helterbrand*, 48 S.W.3d at 658.

The October change order incorporated all terms and conditions of the June 1999 construction contract to the extent those terms did not conflict with terms of the change order. Paragraph III.D. of the change order also provided:

> Lafarge and DIG agree to first attempt to resolve the items marked on the PCO List by negotiation; however, either party, at any time, may resort to their respective contract remedies or remedies as provided by law.

DIG claims that the provision permitting a party to pursue its "remedies as provided by law" permits a party to proceed with a civil action in a court of law, thereby modifying or partially rescinding the arbitration provision in the original construction contract.

▮ Mutual rescission of a contract must be clear, positive, unequivocal, and decisive, and it must manifest the parties' actual intent to abandon contract rights. *AAA Uniform and Linen Supply, Inc. v. Barefoot, Inc.*, 17 S.W.3d 627, 629 (Mo. App.2000). Language excluding certain disputes from arbitration must be clear and unambiguous or unmistakably clear. *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 847 (2d Cir.1987). Where an arbitration clause is broad and contains no express provision excluding a particular grievance from arbitration, only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail. *United Steelworkers of Am.*, 363 U.S. at 584–585, 80 S.Ct. 1347. A motion to compel arbitration of a particular dispute

should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *Id.* at 582–83, 80 S.Ct. 1347. Doubts as to arbitrability should be resolved in favor of coverage. *Id.* at 583, 80 S.Ct. 1347.

Paragraph III.D. of the October change order is not ambiguous and can be interpreted consistently with the broad mandatory arbitration provision of the original construction contract. The "contract remedies" clause requires Lafarge or DIG to submit any controversy or claim arising out of or relating to the construction contract to arbitration. The "remedies as provided by law" clause indicates that the parties reserve other unspecified rights or remedies that do not nullify or are not inconsistent with their obligation to arbitrate. *See, e.g., Dickson County v. Bomar Constr. Co.*, 935 S.W.2d 413, 415 (Tenn.Ct. App.1996). Examples of such unspecified rights or remedies include the right to confirm an arbitration award under 9 U.S.C. sec. 9 or to enforce a mechanic's lien under Missouri's mechanic's lien statutes. Such an interpretation produces harmony and meaningfulness for both clauses.

If DIG's interpretation were adopted, the "remedies at law" clause would be given effect, but the "contract remedies" or arbitration clause would fail. The compulsory nature of the broad arbitration provision of the construction contract would be rendered ineffective at the option of either party. Such interpretation would be contrary to the principles that a contract should be construed as a whole, that all provisions should be harmonized if possible, and that a construction that would render a provision meaningless should be avoided. It would also conflict with the principle that doubts as to arbitrability should be resolved in favor of coverage.

Under the broad arbitration clause of the construction contract, Lafarge and DIG manifested their intent that all disputes arising under the contract would be submitted to arbitration. Paragraph III.D. of the October change order does not clearly, positively, unequivocally, or decisively state that the right and obligation to arbitrate was modified, limited, or rescinded. The provision, and particularly the clause "remedies as provided by law," does not expressly exclude the marked change orders from arbitration. The paragraph does not give the parties an option to proceed under the contract or by remedies available under the law. Instead, it preserves the parties' agreement to arbitrate and other unspecified rights or remedies that are not inconsistent with that obligation.

### Equitable Mechanic's Lien Action

 Finally, Lafarge claims that the trial court erred in denying its motion to compel arbitration because Missouri's equitable lien statutes do not bar enforcement of the arbitration provision.

 Sections 429.270 to 429.340 govern the enforcement and adjudication of the rights of multiple lienholders in an equitable action. *McCarney*, 866 S.W.2d at 891–892. The purpose of an equitable mechanics' lien action is to enforce multiple mechanics' lien claims filed against the same real estate and to adjudicate the rights claimed under all conflicting liens, encumbrances, or other interests in the property. *Mabin Const. Co., v. Historic Constructors, Inc.*, 851 S.W.2d 98, 100 (Mo.App.

1993). An equitable mechanic's lien action may only be brought when more than one mechanic's lien is filed against the property. *Section 429.330.* When an equitable action is commenced, it shall be exclusive of other remedies for the enforcement of mechanic's liens. *Section 429.290.* Finally, section 429.300 provides in pertinent part:

[A]ll other suits that may have been brought on any mechanic's lien claim or demand shall be stayed and no further prosecuted, and the parties in any such other suit shall be made parties to such equitable action as in the foregoing sections provided. . . . After the institution of such equitable action no separate suit shall be brought upon any mechanic's lien or claim against said property, or any of it, but the rights of all persons shall be adjusted, adjudicated and enforced in such equitable suit.

 Thus, once an equitable mechanic's lien action is brought, it is the exclusive method of litigating liens and other claims pertaining to particular property. *Meiners Co. v. Clayton Greens Nursing Ctr.*, 645 S.W.2d 722, 724 (Mo. App.1982). The equitable mechanic's lien action does not, however, preclude the enforcement of the parties' arbitration agreement to resolve the underlying disputes. *See Silver Dollar City, Inc. v. Kitsmiller Constr. Co.*, 874 S.W.2d 526, 535 (Mo.App. 1994); *McCarney*, 866 S.W.2d at 892.[3] While an equitable mechanic's lien action is the exclusive method of litigating liens and other claims regarding property, arbi-

---

**3.** Dunn and DIG contend that *McCarney* did not determine the effect of the statutory equitable mechanic's lien provisions on a contractual agreement to arbitrate because no equitable mechanic's lien action had been filed in that case at the time the motion to compel arbitration and the motion to stay arbitration were considered. While an equitable mechanic's lien action had not been filed in the case, the owner argued on appeal that the claims asserted by the architect and the contractor in their mechanic's liens and arbitration demands must be adjudicated in one equitable mechanic's lien proceeding. The court determined that issue, and the holding is, therefore, applicable in this case.

tration is a proceeding separate from litigation based upon its underlying purpose of encouraging dispute resolution without resort to the courts. *McCarney*, 866 S.W.2d at 892. To characterize it as a form of litigation, rather than as an alternative to litigation, is contrary to its nature and is an unreasonable construction of equitable mechanic's lien statutes. *Id.* Thus, the arbitration agreement between Lafarge and DIG is enforceable regardless of whether multiple mechanic's liens exist creating a basis for an equitable mechanic's lien action. *See Silver Dollar City*, 874 S.W.2d at 535; *McCarney*, 866 S.W.2d at 892.

The trial court erred in denying Lafarge's motion to compel arbitration between Lafarge and DIG. That part of the trial court's judgment is, therefore, reversed, and the case is remanded to the trial court to compel arbitration of those claims.

## Arbitrability of Claims Raised by Lafarge in Its Demand for Arbitration

Lafarge contends that the trial court erred in granting Dunn and DIG's joint motion to stay arbitration because: (1) its claims against both DIG and Dunn fall within the scope of the arbitration agreement of the construction contract, and (2) the written guaranty executed by Dunn inures to the benefit of Lafarge and incorporated the construction contract and arbitration agreement.

In Lafarge's demand for arbitration, it claimed damages for DIG's failure to timely complete the construction contract and for failure to properly perform and coordinate the construction work. Lafarge sought similar damages from Dunn as guarantor of the construction contract. Thereafter, DIG and Dunn filed a joint motion to stay arbitration, which was eventually granted by the trial court.

### Claims Against DIG

Lafarge contends that its claims against DIG in its demand for arbitration fall within the scope of the parties' arbitration agreement and, therefore, must be arbitrated. As discussed previously, the June 1999 construction contract contained a broad arbitration provision that mandated arbitration of "[a]ny controversy or claim arising out of or relating to [the] contract." Clearly, Lafarge's claim for damages against DIG for DIG's "failure to timely complete" the construction contract and for its "failure to properly perform and coordinate the construction work" arise out of or relate to the construction contract. Lafarge's claims against DIG fall within the substantive scope of the parties' arbitration agreement.

Once again, DIG asserts that the October change order "freed [it] from its obligation to arbitrate." The October change order does not modify or rescind the arbitration provision in the construction contract but preserves the parties' agreement to arbitrate as well as other unspecified rights or remedies that are not inconsistent with that obligation.

Finally, DIG asserts that since Lafarge's claims against it are compulsory counterclaims to its claims against Lafarge that were properly raised in the equitable mechanic's lien action in the circuit court proceedings, the trial court's judgment staying the arbitration proceedings was correct. Missouri has a compulsory counterclaim rule that compels a party to state any claim it has against its adversary that arises out of the transaction or occurrence that is the subject matter of the suit. *Rule 55.32(a); Evergreen Nat'l Corp. v. Killian Constr. Co.*, 876 S.W.2d 633, 635 (Mo.App.1994). The purpose of the rule is

to discourage separate litigation covering the same subject matter and to require adjudication of such claims in the same action. *Evergreen,* 876 S.W.2d at 635. The compulsory counterclaim is a means of bringing together all logically related claims into a single litigation, through the penalty of precluding the later assertion of omitted claims. *Id.*

The preclusion effect of the compulsory counterclaim rule, however, is subject to contractual adjustment by the parties. *Publicis Communication v. True N. Communications Inc.,* 132 F.3d 363, 366 (7th Cir.1997). An arbitration clause is simply a particular type of forum selection clause. *Id.* Thus, a dispute covered by a contract's arbitration clause need not be asserted as a compulsory counterclaim in litigation to avoid waiver. *Local Union No. 11 v. G.P. Thompson Elec., Inc.,* 363 F.2d 181, 185 (9th Cir.1966).

In this case, Lafarge and DIG agreed that any dispute arising out of the construction contract shall be settled by arbitration. DIG cannot now seek to bar arbitration of Lafarge's claims against it because those claims were not presented as compulsory counterclaims in its suit against Lafarge in circuit court, which, as previously discussed, was itself subject to arbitration. *See also Sokkia Credit Corp. v. Bush,* 147 F.Supp.2d 1101, 1105–06 (D.Kan.2001).

The trial court erred in staying arbitration of Lafarge's claims against DIG. That part of the judgment is, therefore, reversed, and the case is remanded to the trial court to enter an order compelling arbitration of Lafarge's claims against DIG.

## Motion to Stay Litigation

The trial court also overruled Lafarge's motion to stay litigation pending arbitration. Lafarge argues that this ruling is appealable under The Missouri Uniform Arbitration Act and under the FAA. It further argues that, because its claims are subject to arbitration, those acts require the court to stay the litigation pending arbitration.

As discussed above, Missouri's Uniform Arbitration Act expressly permits an appeal from judgments relating to arbitration. It does not expressly provide for a right of appeal from an order denying a motion to stay litigation pending arbitration. *Sec. 435.440.* But, Lafarge argues, the FAA applies to transactions involving commerce. Section 2 of the FAA creates federal substantive rights that must be enforced by the state courts. *Moses H. Cone Hospital v. Mercury Const. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The parties concede the transaction in this case falls within the FAA. Therefore, Lafarge argues, the FAA's provisions for appeal of a judgment failing to stay litigation pending arbitration must apply. *9 U.S.C. sec. 16(a).* In support, it cites to a number of cases decided by the Missouri Court of Appeals that have found judgments denying stays of arbitration appealable.[4]

Dunn and DIG counter by noting that the cited Missouri cases assume rather than decide this issue and do not closely analyze the language of section 3 of the

---

4. *See, e.g., Getz Recycling, Inc. v. Watts,* 71 S.W.3d 224, 228 n. 1 (Mo.App.2002); *VCW, Inc. v. Mutual Risk Management, Ltd.,* 46 S.W.3d 118, 121 (Mo.App.2001); *Metro Demolition & Excavating Co. v. H.B.D. Contracting, Inc.,* 37 S.W.3d 843 (Mo.App.2001)(assumes appealability); *Mueller v. Hopkins & Howard, P.C.,* 5 S.W.3d 182, 186–87 (Mo.App. 1999); *Reis v. Peabody Coal Co.,* 935 S.W.2d 625, 629 (Mo.App.1996); and *Duggan v. Zip Mail Services, Inc.,* 920 S.W.2d 200, 202 (Mo. App.1996).

FAA, which they say provides for an appeal only of actions filed in federal court. Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

*9 U.S.C. sec. 3 (1999).* In support, Dunn and DIG cite *Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 477, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989), in which the United States Supreme Court stated, "... [W]e have never held that Sections 3 and 4, which by their own terms apply only to proceedings in federal court, are nonetheless applicable in state court." The Supreme Court expressly declined to resolve that issue in *Volt*, finding it unnecessary to do so on the facts of that case.

This Court also finds it unnecessary to resolve this issue on the facts of this case. Lafarge's argument is that the trial court was obligated to stay the litigation because it was obligated to grant the motion compel arbitration. Since the trial court overruled the motion to compel arbitration, the motion to stay litigation effectively became moot.

This Court has reversed the determination of the trial court not to compel arbitration and has remanded with directions to grant the motion to compel arbitration. Although section 435.440 does not provide for appeal of denial of a motion to stay litigation, by its terms section 435.355.4 states in pertinent part:

> 4. Any action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefor has been made under this section or, if the issue is severable, the stay may be with respect thereto only. When the application is made in such action or proceeding, *the order for arbitration shall include such stay.*

*Sec. 435.355.4* (emphasis added). On remand, the trial court will comply with all relevant statutory provisions, including section 435.355.4. Unless and until it fails to do so, there is no basis to request relief from the appellate courts. *Cf. State ex rel. PaineWebber v. Voorhees*, 891 S.W.2d 126, 130 (Mo. banc 1995) (granting writ of prohibition where trial court refused to stay litigation pending arbitration). Therefore, this aspect of the appeal is dismissed as moot.

### Claims Against Dunn

Next, Lafarge contends that its claims against Dunn in its demand for arbitration require arbitration. Dunn claims that Lafarge is not the obligee under the plain terms of the guaranty and, therefore, cannot invoke the guaranty's provisions. It also claims that it has no agreement to arbitrate any dispute with Lafarge because the guaranty does not incorporate the arbitration provision in the construction contract.

### Lafarge as the Obligee Under the Guaranty

▇ Dunn's contract guaranty guarantees DIG's prompt and satisfactory performance of the construction contract between Lafarge and DIG. If DIG defaulted on the construction contract's performance, Dunn had the option to complete the work of the contract or to pay to obligee

all damages, costs, and expenses that the obligee is entitled to recover from DIG by reason of the default. The guaranty names as the obligee Lafarge Canada, Inc., a wholly controlled subsidiary of Lafarge.

A guaranty, a species of contract, is a collateral agreement for another's undertaking and is an independent contract that imposes responsibilities different from those imposed in the agreement to which it is collateral. *Jamieson–Chippewa Inv. Co., v. McClintock,* 996 S.W.2d 84, 87 (Mo.App.1999). The rules of construction applicable to other contracts apply to a guaranty. *Id.* at 88. However, the liability of a guarantor is to be strictly construed according to the terms of the guaranty agreement and may not be extended by implication beyond the strict letter of the obligation. *Id.; Ulreich v. Kreutz,* 876 S.W.2d 726, 728 (Mo.App. 1994). Nonetheless, such strict construction does not entitle a guarantor to demand an unfair and strained interpretation of the words used in order that it may be released from the obligation that it has assumed. *Zoglin v. Layland,* 328 S.W.2d 718, 721 (Mo.App.1959).

A guaranty agreement may be construed together with any contemporaneously executed agreements dealing with the same subject matter as an aid in ascertaining the intention of the parties. *McClintock,* 996 S.W.2d at 87. Those agreements, however, do not constitute a single contract, and the liability of the guarantor remains primarily dependent on the guaranty agreement itself. *Id.* Any ambiguity in a guaranty agreement should arise in the first instance from the agreement itself, and neither a court nor the parties will be permitted to create an ambiguity where none exists. *Id.* at 89.

Guaranties are divided into two types—general and special. *Gateway*

*Frontier Properties, Inc. v. Selner, Glaser, Komen, Berger & Galganski, P.C.,* 974 S.W.2d 566, 569 (Mo.App.1998). A general guaranty is addressed to persons generally and is assignable under the principles of contract law. *Id.* at 569–570. On the other hand, a special guaranty is addressed to a particular person. *Id.* at 570. As a general rule, a guaranty addressed to a particular person may only be acted upon and enforced by such party. *Id.; Mitchell & Bro. v. Railton,* 45 Mo.App. 273, 277 (1891). Where, however, a guaranty is intended by both parties to be for the benefit of someone other than the addressee or named obligee, a guaranty is not special despite being addressed to a specific person. *Railton,* 45 Mo.App. at 277–80; 38 Am.Jur.2d Guaranty Section 110 (1999). Thus, a principal may take advantage of a guaranty naming its agent as obligee where the guaranty was intended by both parties to be for the benefit of the principal. *Id.* Such principle is consistent with the general rule in agency law that the other party to a contract made by an agent for a disclosed or partially disclosed principal, acting within its authority, is liable to the principal, unless the principal is excluded as a party by the form or terms of the contract. *Restatement (Second) of Agency Section 292 (1958).*

In this case, Lafarge, not Lafarge Canada, was intended by the parties to be the obligee of the contract guaranty. Lafarge Canada is a wholly controlled subsidiary of Lafarge and is extensively involved in and responsible for the management of the construction project on behalf of Lafarge. The guaranty itself demonstrates that Lafarge was the entity the guaranty was intended to benefit. The guaranty explains that the obligee "has executed a Contract" with DIG for construction work at the Sugar Creek plant project. The contract for the design and construction of the cement plant, which was attached to

and was specifically referenced throughout the guaranty, was executed between DIG and Lafarge—not Lafarge Canada. The notation "Lafarge Corporation c/o Lafarge Canada–CTS" is typed at the top of every page of the construction contract. Throughout the guaranty, reference is made to Dunn's guarantee of DIG's obligations to the obligee under the construction contract. The construction contract between Lafarge and DIG and the guaranty agreement were executed contemporaneously and concern the same subject matter. Construing the agreements together, Dunn's obligations under the guaranty were intended to run to the party with whom DIG contracted for the construction of the cement plant—Lafarge, not Lafarge Canada. Nothing in the guaranty excludes Lafarge as a party. *Cf. Rush Presbyterian St. Luke's Med. Ctr. v. Safeco Ins. Co.,* 825 F.2d 1204, 1205–06 (7th Cir. 1987).

Lafarge may enforce its rights under the guaranty.

### Whether Arbitration Provision was Incorporated into Dunn's Guaranty

■ Dunn next contends that it has no agreement to arbitrate any dispute with Lafarge because it, as guarantor, is not a signatory to a contract containing an arbitration agreement and the guaranty does not incorporate the arbitration provision of the construction contract between Lafarge and DIG.

■ Arbitration is a matter of contract, and a party cannot be required to arbitrate a dispute that it has not agreed to arbitrate. *AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,* 242 F.3d 777, 780 (8th Cir.2001). As such, a guarantor who is not a signatory to a contract containing an arbitration clause is generally not bound by the arbitration clause. *Grundstad v. Ritt,* 106 F.3d 201, 204 (7th Cir.1997). However, in a majority of state courts, including Missouri, due to the strong federal policy in favor of arbitration, arbitration agreements are enforced against guarantors or sureties where the arbitration agreement is incorporated by reference [5] into the guaranty or performance bond. *Sheffield Assembly of God Church, Inc. v. Am. Ins. Co.,* 870 S.W.2d 926, 931 (Mo.App.1994); Gabriel M. Wilner, 1 Domke On Commercial Arbitration Section 10:04 (1999).

The instant case is distinguishable from *Jim Carlson Construction, Metro Demoli-*

---

5. In Missouri, matters incorporated into a contract by reference are as much a part of the contract as if they had been set out in the contract in haec verba. *Metro Demolition & Excavating Co. v. H.B.D. Contracting, Inc.,* 37 S.W.3d 843, 846 (Mo.App.2001). Under this principle, parties in construction subcontract situations have been held to be subject to arbitration provisions contained in construction contracts that were incorporated by reference into the subcontracts. *Id.* at 847; *Jim Carlson Constr., Inc. v. Bailey,* 769 S.W.2d 480, 482 (Mo.App.1989). For example, in *Jim Carlson Construction, Inc. v. Bailey,* where an owner/contractor agreement for the construction of a residential dwelling specifically incorporated by reference the American Institute of Architects standard form of General Conditions that contained an arbitration provision, the court held that the parties to the owner/contractor agreement were subject to the arbitration provision. 769 S.W.2d at 482. Similarly in *Metro Demolition & Excavating Co. v. H.B.D. Contracting, Inc.,* where two subcontracts involving a construction project contained language that specifically incorporated by reference certain documents including the general conditions of the prime construction contract and the general conditions of the prime contract contained arbitration provisions, the court held that the subcontracts incorporated by reference those arbitration provisions, and the parties to the subcontracts were required to arbitrate their disputes under the subcontracts. 37 S.W.3d at 847.

*tion,* and *Sheffield.* In those cases, documents containing arbitration provisions were specifically incorporated by reference into other contracts. In this case, Dunn's guaranty refers to the construction contract between Lafarge and DIG, and the contract is attached to the guaranty. The guaranty also provides that Dunn "guarantees prompt and satisfactory performance of the attached Contract in accordance with all its terms and conditions." The guaranty does not, however, incorporate by reference the construction contract. Mere reference to the construction contract in the guaranty is insufficient to establish that Dunn bound itself to the arbitration provision of the construction contract. *See Grundstad,* 106 F.3d at 205. Likewise, the guaranty provision of the October change order, which provides that the guaranty shall apply to and cover DIG's obligations under the change order, does not incorporate by reference the construction contract or the change order itself. Additionally, unlike in *Sheffield,* Dunn has not judicially admitted that it is bound by the arbitration provision. Dunn has consistently resisted arbitration. Dunn is not required to arbitrate the claims raised by Lafarge against it under the guaranty.[6]

### Estoppel

Lafarge claims that Dunn should be estopped from avoiding its obligation to arbitrate because its claims against Dunn under the guaranty are inextricably intertwined with its claims against DIG under the construction contract and because Dunn has previously sought the benefit of other provisions of the construction contract.

Lafarge cites two cases, *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.,* 863 F.2d 315 (4th Cir.1988), and *McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co., Inc.,* 741 F.2d 342 (11th Cir.1984), in support of its first argument. These cases, which held that arbitration between a signatory and a nonsignatory was required based on an estoppel theory, are, however, distinguishable from the instant case. In those cases, signatories to contracts containing an arbitration agreement were estopped from avoiding arbitration with nonsignatories when the issues the nonsignatories were seeking to resolve in arbitration were intertwined with the agreement signed by the signatory. *J.J. Ryan & Sons,* 863 F.2d at 320–321; *McBro,* 741 F.2d at 343–344. Conversely, in this case, Lafarge, as signatory to the construction contract that contains the arbitration clause, seeks to compel Dunn, a nonsignatory, to arbitrate its claims against Dunn under the guaranty. A party cannot be required to arbitrate a dispute that it has not agreed to arbitrate. *AgGrow Oils,* 242 F.3d at 780. Dunn is not a signatory to a contract containing an arbitration clause. At no point did Dunn indicate a willingness to arbitrate any disputes with Lafarge. *See Thomson–CSF, S.A.,* 64 F.3d at 779.

Furthermore, the cases cited by Lafarge involved claims that were integrally related to the contract containing the arbitration provision. *J.J. Ryan & Sons,* 863 F.2d at 320–321; *McBro,* 741 F.2d at 343–344. *See also Thomson–CSF, S.A.,* 64 F.3d at 779. While the contract guaranty signed by Dunn guarantees DIG's prompt and satisfactory performance of the construction contract between Lafarge and DIG, it is a collateral agreement for anoth-

---

**6.** Whether Dunn is ultimately bound by the results of the arbitration between Lafarge and DIG is not addressed in this opinion.

er's undertaking and is an independent contract that imposes different responsibilities from those imposed in the construction contract between Lafarge and DIG. *Jamieson–Chippewa Inv. Co.,* 996 S.W.2d at 87. Dunn's liability as a guarantor is not integrally related to the construction contract between Lafarge and DIG.

 Finally, Lafarge argues that Dunn should be estopped from avoiding its obligation to arbitrate because Dunn has previously sought the benefit of other provisions of the construction contract. By accepting benefits, a party may be estopped from questioning the existence, validity, and effect of a contract. *Dubail v. Medical West Building Corp.,* 372 S.W.2d 128, 132 (Mo.1963).

Lafarge's reliance on *Dubail* and its general estoppel rule is misplaced. In that case, the defendant corporation undoubtedly received and accepted benefits of the contract. It not only accepted the legal services and advancements of the attorney, but it also pleaded in a separate lawsuit the provision in the contract whereby the attorney agreed to hold it harmless against any claims made by the other corporation. *Id.* In this case, however, it cannot be said that Dunn has accepted the benefits of the construction contract between Lafarge and DIG. Lafarge argues that Dunn accepted the benefits of the construction contract when, after it notified Dunn of DIG's default under the construction contract, Dunn sought to avoid its responsibilities to Lafarge by citing a provision of the October change order, which is part of the construction contract. The provision in the change order cited by Dunn purportedly limits Lafarge's damages against DIG if DIG fails to complete a specific aspect of the construction contract on or before a particular date. The provision is a possible defense of DIG's against a claim by Lafarge. Dunn's citation of the provision in response to Lafarge's notification of DIG's default was, therefore, not inconsistent with its argument that the arbitration provision of the construction contract does not apply to its guaranty because it was never incorporated by reference into the guaranty. Thus, *Dubail's* estoppel principle does not apply in this case.

Dunn did not agree to arbitrate its liability as guarantor. The trial court did not err in staying Lafarge's arbitration against Dunn. That part of the trial court's judgment is affirmed.

The appeal is dismissed in part as moot; the judgment of the trial court is otherwise affirmed in part and reversed in part; and the case is remanded.

All concur.