# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

————————

No. 08-2985

————————

Robert A. Portell,                           *
                                             *
            Appellee,                        *
                                             *      Appeal from the United States
      v.                                     *      District Court for the
                                             *      Western District of Missouri.
AmeriCold Logistics, LLC,                    *
                                             *
            Appellant.                       *


————————

Submitted: March 10, 2009
Filed: June 22, 2009

————————

Before GRUENDER, ARNOLD and BENTON, Circuit Judges.

————————

GRUENDER, Circuit Judge.

The district court[1] granted summary judgment to Robert Portell on his claim for a severance package under his employment agreement with AmeriCold Logistics, LLC ("AmeriCold"), after determining that AmeriCold's attempt to revoke its notice of non-renewal was ineffective and finding that AmeriCold terminated Portell's employment without cause. AmeriCold appeals, and for the reasons discussed below, we affirm.

———————————————

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

## I. BACKGROUND

Portell was a General Manager of AmeriCold's refrigerated warehouse facility in Marshall, Missouri. On June 8, 1998, Portell and AmeriCold entered into an "Employment and Non-Solicitation and Non-Disclosure Agreement" ("the employment agreement"). The employment agreement had a one-year term but stated that "[t]he Employment Period shall be deemed to be automatically extended, upon the same terms and conditions for successive one (1) year periods . . . unless either party gives written notice of non-renewal to the other party hereto no later than ninety (90) days prior to the end of the then current Employment Period." The employment agreement provided that aside from non-renewal, Portell's employment with AmeriCold could be terminated in one of four ways: Portell's death, Portell's disability, termination for cause, or termination without cause. On June 24, 1998, Portell and AmeriCold amended the employment agreement to add that non-renewal of the employment agreement after good faith negotiations would constitute termination without cause. If AmeriCold terminated Portell's employment without cause, the employment agreement provided that Portell would be entitled to the severance package detailed in the employment agreement.

The parties last renewed the employment agreement on June 8, 2005. On March 3, 2006, more than ninety days before the end of Portell's then-current employment period on June 8, 2006, AmeriCold sent Portell a letter stating that "the Company hereby gives you written notice of its intent of non-renewal of the Agreement . . . . You are hereby given proper written notice in excess of the required ninety (90) days as specified in the Agreement." The letter also informed Portell that AmeriCold "[did] not intend to terminate your employment as a result of this non-renewal. You will continue your employment after the non-renewal date and you will become subject to the then current terms and conditions of employment for all exempt managerial employees." On March 9, 2006, Portell contacted Kathy Dodd, AmeriCold's Vice President of Human Resource Services, and told her that he

considered AmeriCold's letter to constitute a termination of the employment agreement without cause and that he was therefore entitled to the severance package.

On March 23, 2006, less than ninety days before the end of the then-current employment period, AmeriCold sent Portell a letter purporting to revoke its March 3 notice of non-renewal and stating that Portell's "employment [would] continue under the contract until further notice." In a letter dated May 8, 2006, Portell informed AmeriCold that he accepted the March 3 notice of non-renewal, rejected AmeriCold's attempted revocation of the non-renewal, and would cease working on June 8, 2006. On May 15, 2006, AmeriCold sent Portell a letter saying that he was still employed under the employment agreement and that he would not receive the severance package if he voluntarily resigned. On June 8, 2006, Portell discontinued working at AmeriCold.

After AmeriCold refused to provide Portell the severance package, Portell filed suit. Both parties filed motions for summary judgment. The district court granted Portell's motion and denied AmeriCold's motion, finding that Portell's employment was terminated without cause by AmeriCold's March 3 letter, that AmeriCold's attempt to revoke the notice of non-renewal through the March 23 letter was ineffective because it occurred after the ninety-day deadline, and that Portell was therefore entitled to the severance package under the employment agreement. AmeriCold appeals the grant of summary judgment to Portell, arguing that its March 23 letter successfully revoked its notice of non-renewal.

## II.    DISCUSSION

We review a grant of summary judgment de novo. *Larson v. Kempker*, 414 F.3d 936, 939 (8th Cir. 2005). A court should grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We view the

-3-

evidence in the light most favorable to the nonmoving party. *Bearden v. Lemon*, 475 F.3d 926, 929 (8th Cir. 2007).

The parties agree that the employment agreement is governed by Missouri law. *See Spirco Envtl., Inc. v. Am. Int'l Specialty Lines Ins. Co.*, 555 F.3d 637, 641 (8th Cir. 2009). "The cardinal principle of contract interpretation is to ascertain the intention of the parties and to give effect to that intent." *Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. 2003) (per curiam). We read the contract as a whole and give the terms their "plain, ordinary and usual meaning." *Id.* We construe each of the terms to avoid rendering the other terms meaningless, and we prefer a "construction that attributes a reasonable meaning to all the provisions of the agreement . . . to one that leaves some of the provisions without function or sense." *Id.*

The plain language of the employment agreement provides for its automatic annual renewal unless, more than ninety days before the end of the then-current employment period, either party gives written notice of non-renewal to the other party. As the district court noted, "[h]aving bargained for ninety days of knowledge, the parties are entitled to rely on the statements (if any) made more than ninety days before the [employment agreement's] anniversary date." AmeriCold's March 3 letter was a written notice to Portell more than ninety days before the end of his then-current employment period on June 8. The letter thus qualified as notice of non-renewal under the employment agreement.

AmeriCold claims, however, that its March 23 letter served as a revocation of the March 3 notice of non-renewal, arguing that under Missouri law a notice of future contract termination may be revoked at any time before the contract expires. AmeriCold cites *Malin v. Netherlands Insurance Co.*, 219 S.W. 143 (Mo. Ct. App. 1920), in support of this contention, but *Malin* stands for a different proposition. *Malin* involved an insurance policy that was effective for a five-year period from noon on August 20, 1915, to noon on August 20, 1920. The policy allowed the insurer to

-4-

terminate coverage at any time during the insured period by giving notice to the insured and returning the unearned portion of the insurance premium. *Id*. at 143. The policy provided that coverage would continue for five days after the insured received the notice of termination. The insurer mailed a notice of termination on May 28, 1917, stating that coverage was terminated as of noon on June 4, 1917. The insured received the notice at 9 a.m. on May 31, 1917, and the insured property was destroyed at 2 p.m. on June 5, 1917. *Id*. The issue before the Missouri Court of Appeals was whether the five days of continued coverage following the notice of termination had elapsed between May 31 and June 4. Under Missouri law, courts considered a day to run from midnight to midnight and excluded the first and last days from their count of days. The insurer, however, argued that under the insurance policy a day should be considered to run from noon to noon, since the policy started at noon and ended at noon. The court held that the terms of the insurance policy did not require the use of any method for determining the five-day period other than that provided by Missouri law. Therefore, the court held that the policy was still in effect when the property was destroyed on June 5 because that day fell within the five-day post-termination coverage period. *Id*. at 144. *Malin* does not stand for the proposition that Missouri law allows a future notice of termination to be revoked at any time as AmeriCold suggests.

Furthermore, even if Missouri law generally would allow a future notice of termination to be revoked at any time, the parties could certainly provide otherwise by the terms of their contract. *See id*. (explaining that "the ordinary counting of time . . . is not the rule where the contract itself manifests a different intention"); *cf. Blair v. Petty County Mut. Ins. Co*., 118 S.W.3d 605, 607 (Mo. 2003) (finding that an insurance company could not revoke coverage before ten days passed when a policy provision required "nonpayment, notice, and the passage of 10 days—in that order—before cancellation" could occur). AmeriCold cites no Missouri law in

support of its contention that it can revoke its notice of non-renewal where the parties have bargained for and agreed upon a ninety-day period of advanced notice.[2]

Here the parties agreed that a notice of non-renewal had to be provided at least ninety days prior to the expiration of the then-current employment period. AmeriCold's March 3 letter provided such notice. Because AmeriCold attempted to revoke its notice of non-renewal within the bargained-for ninety day advance-notice period, the attempted revocation was simply too late. We must construe the agreement in such a way as to "attribute[] a reasonable meaning to *all* the provisions of the agreement." *Dunn Indus. Group*, 112 S.W.3d at 428 (emphasis added). To allow AmeriCold to revoke its notice of non-renewal after the ninety-day advance-notice period began would contravene the terms of the employment agreement's notice provision.

AmeriCold also contends that Portell is not entitled to severance benefits under the employment agreement because his employment was not terminated without cause. It claims that because the employment agreement defined "Termination Without Cause" as "termination of Employee's employment" and AmeriCold

---

[2]AmeriCold also relies on two decisions interpreting the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §§ 2801, *et seq.*, which governs petroleum franchise relationships, in support of its argument that its untimely revocation attempt was effective. The PMPA states that "[p]rior to termination of any franchise or nonrenewal of any franchise relationship, the franchisor shall furnish notification of such termination or such nonrenewal to the franchisee who is a party to such franchise or such franchise relationship . . . not less than 90 days prior to the date on which such termination or nonrenewal takes effect." 15 U.S.C. § 2804(a)(2). AmeriCold cites Ninth and Eleventh Circuit cases holding that under the PMPA a franchisor may revoke a prior notice of termination at any time before the termination or non-renewal actually takes effect. *See Seckler & Warsec, Inc. v. Star Enter.*, 124 F.3d 1399 (11th Cir. 1996); *Akky v. BP Am.*, 73 F.3d 974 (9th Cir. 1996). However, we find our sister circuits' interpretation of the PMPA inapposite to our interpretation of an employment contract under Missouri common law.

-6-

purported not to terminate Portell's employment, there was no termination without cause. However, the First Addendum to the employment agreement added the following provision: "[t]he non-renewal of this Agreement, following the good faith negotiations[3] of both parties hereto, shall constitute a Termination Without Cause." Because the March 3 letter constituted a notice of non-renewal and the March 23 letter was not an effective revocation of the notice of non-renewal, we conclude that Portell was terminated without cause under the employment agreement, and we reject AmeriCold's argument that Portell is not entitled to severance benefits.

## III.   CONCLUSION

Accordingly, we affirm the grant of summary judgment to Portell.

_____

---

[3]Because AmeriCold does not argue in its opening brief that the lack of good faith negotiations precludes a finding of termination without cause, the argument is waived. *See Eckert v. Titan Tire Corp.*, 514 F.3d 801, 805 n.2 (8th Cir. 2007).