**KOHNER PROPERTIES, INC., Debra J. Pyzyk, Individually and as Trustee of the Debra J. Pyzyk, Revocable Living Trust, and as Trustee of the Residuary Trust Created under the Jon M. Pyzyk Revocable Living Trust, Jamestown Indianapolis, LLC, Willowbrook Indianapolis, LLC, Whitfield Square, LLC, Waterstone Place, LLC and Vineyards Management, Inc, Plaintiffs/Appellants,**

v.

**SPCP GROUP VI, LLC, Defendant/Counterclaim Plaintiff/Respondent,**

v.

**Barrington Place Management, Inc., Vineyards Apartments, LLC, Shenandoah Valley, LLC, Heatherstone Apartments, LLC, and Barrington Place, LLC., Counterclaim Defendants.**

**No. ED 99900.**

Missouri Court of Appeals, Eastern District, Division Two.

Sept. 17, 2013.

338

Joseph R. Dulle, Robert Hellwig, Clayton, MO, for Plaintiffs/Appellants.

Booker T. Shaw, William R. Bay, Christopher M. Hohn, John S. Kingston, St. Louis, MO, Ryan L. Leitch, Kevin N. Tharp, Attorneys–Pro Hac Vice, Indianapolis, IN, for Defendant/Counterclaim Plaintiff/Respondent.

SHERRI B. SULLIVAN, J.

*Introduction*

Kohner Properties, Inc. (Kohner); Debra J. Pyzyk, Individually and as Trustee of the Debra J. Pyzyk Revocable Living Trust (Debra Trust) and as Trustee of the Residuary Trust created under the Jon M. Pyzyk Revocable Living Trust (Jon Trust); Jamestown Indianapolis, LLC (Jamestown); Willowbrook Indianapolis, LLC (Willowbrook); Whitfield Square, LLC (Whitfield); Waterstone Place, LLC (Waterstone); and Vineyards Management, Inc. (Vineyards Management) (collectively Appellants) appeal from the trial court's judgment denying their Application to Compel Arbitration. We affirm.

*Factual and Procedural Background*

Starting in 2004, Bank of America, N.A. (BOA) loaned approximately $34.5 million to Jamestown, Willowbrook, Waterstone, Whitfield (collectively, the Borrowers) and Shenandoah Valley, LLC (Shenandoah), the owners and operators of apartment buildings located in Tulsa, Oklahoma and Indianapolis, Indiana.

*A. The Loan Agreement*

In January 2005, Jamestown, Willowbrook, Shenandoah and Waterstone entered into a term loan agreement with BOA (the Loan Agreement). Section 8.16 of the Loan Agreement [1] contains an arbitration clause:

Section 8.16 *Dispute Resolution*

(a) *Arbitration.* Except to the extent expressly provided below, any Dispute shall, upon the request of either party, be determined by binding arbitration in

---

1. The note signed by Whitfield in favor of BOA (the Whitfield Note) was originally signed in March 2004 and was amended, modified and restated several times over a course of years. The Whitfield Note contains similarly worded arbitration and reservation of rights clauses. The Loan Agreement and Whitfield Note will collectively be referred to as "the Loans."

accordance with the Federal Arbitration Act, Title 9, United States Code (or if not applicable, the applicable state law), the applicable rules for arbitration of disputes of JAMS and the "Special Rules" set forth below . . .

. . .

(c) *Reservations of Rights.* Nothing in this Agreement shall be deemed to . . . (ii) apply to or limit the right of Lender (A) to exercise self help remedies such as (but not limited to) setoff, or (B) to foreclose judicially or nonjudicially against any real or personal property collateral, or to exercise judicial or non-judicial power of sale rights, (C) to obtain from a court provisional or ancillary remedies such as (but not limited to) injunctive relief, writ of possession, pre-judgment attachment, or the appointment of a receiver, or (D) to pursue rights against a party to this Agreement in a third-party proceeding in any action brought against Lender in a state, federal or international court, tribunal or hearing body (including actions in specialty courts, such as bankruptcy and patent courts). Lender may exercise the rights set forth in clauses (A) through (D), inclusive, before during or after the pendency of any arbitration proceeding brought pursuant to this Agreement. . . .

The Loan Agreement contains the following definitions:

"Dispute" means any controversy, claim or dispute between or among the parties to this Agreement, including any such controversy, claim or dispute arising out of or relating to (a) this Agreement, (b) any other Loan Document, (c) any related agreements or instruments, or (d) the transaction contemplated herein or therein (including any claim based on or arising from an alleged personal injury or business tort).

"Loan Document" means this Agreement, the Note, the Mortgage, the Environmental Agreement, the Guaranty, any application or reimbursement agreement executed in connection with any Letter of Credit, and any and all other documents which Borrower, Guarantor or any other party or parties executed and delivered, or may hereafter execute and deliver, to evidence, secure or guarantee the Obligations, or any part thereof, as the same may from time to time be extended, amended, restated, supplemented or otherwise modified.

### B. The Guaranty Agreements

Kohner, Jon M. Pyzyk and Debra J. Pyzyk executed various guaranty agreements (the Guaranty Agreements) in favor of BOA in connection with the Loans over the course of several years.

### C. The Pledge Agreement

In 2009, 2010, and 2011, the Debra Trust, the Jon Trust, Vineyards Management and Barrington Place Management, Inc. (Barrington Place) (collectively Pledgors) executed a Pledge Agreement in favor of BOA in connection with BOA's extension and modification of the Loans.

The Pledge Agreement states BOA required the agreement "in order to secure the prompt and complete payment, observance and performance of all of the indebtedness, obligations and liabilities owing to Lender under the Whitfield Note and/or the [Loan Agreement] and any of the other 'Loan Documents,' as such term is defined in each of the Whitfield Note and/or [the Loan Agreement] . . . ." The agreement pledged additional collateral for the Loans and granted a security interest to BOA in "all of [Pledgors'] right to receive any profits, proceeds, distributions, loan repayments, advances, contributions and/or payments in money or in kind"

from the collateral. The collateral includes 100 percent of Pledgors' ownership interests in Vineyards Apartments, LLC (Vineyard Apartments); Barrington Place, LLC; Shenandoah; and Heatherstone Apartments, LLC (Heatherstone) (collectively the Collateral or Pledge Companies).

The last amended Pledge Agreement contains an Acknowledgement in which the Pledge Companies acknowledge and consent to the amendments and ratify and reaffirm their obligations under the Pledge Agreement. The Acknowledgement is also signed by Jamestown, Willowbrook, Waterstone and Whitfield as "Borrowers," wherein they acknowledge and consent to the amendment of the Pledge Agreement and acknowledge and agree that Barrington Place shall be deemed one of the Pledge Companies, as such term is used in the Loan Agreement.

The Pledge Agreement contains the following provisions:

12. *Events of Default.* Each of the following events shall constitute an event of default . . .

(c) the occurrence of any "Event of Default" under the Whitfield Note and/or [the Loan Agreement] or under any other "Loan Document" as such term is defined in either the Whitfield Note or [the Loan Agreement].

. . .

15. *Lender's Exercise of Rights and Remedies at Such Time as an Event of Default Exists.* Notwithstanding anything set forth herein to the contrary, it is hereby expressly agreed that Lender may exercise any of the rights and remedies provided in this Agreement or the other Loan Documents (as defined in [the Loan Agreement] and/or Whitfield Note) or at law or in equity at any time that an Event of Default exists. Pledgor acknowledges and agrees that this Agreement is a "Loan Document", as

such term is used in [the Loan Agreement] and the Whitfield Note.

### D. Alleged Default of the Loans

The pleadings allege the Loans matured on October 15, 2012; that Borrowers defaulted on the Loans by not paying the outstanding balance of approximately $24 million, and that those defaults have not been cured. In December 2012, BOA sold, transferred, and assigned all of its right, title and interest in the Loans, the Guarantee Agreements and the Pledge Agreement to SPCP Group VI, LLC (SPCP). In February 2013, SPCP filed actions in Indiana and Oklahoma for breach of the Loans.

On February 8, 2013, SPCP noticed the sale of certain Collateral under the Pledge Agreement. On February 15 and February 19, 2013, Appellants filed a Demand for Arbitration with JAMS, the arbitrator named in the Loans.

On February 19, 2013, Appellants instituted the current matter by filing a Verified Motion for Temporary Restraining Order seeking a temporary restraining order (TRO) enjoining SPCP from proceeding with the sale under the Pledge Agreement and an Application to Compel Arbitration seeking an order from the court compelling the parties to arbitrate any and all disputes arising from the Loans, the Guaranty Agreements, and the Pledge Agreement. On February 26, 2013, the trial court entered its judgment denying Appellants' request for a TRO.

On March 6, 2013, SPCP conducted a UCC sale of the payment rights as to Vineyard Apartments, Shenandoah, and Heatherstone. SPCP was the highest bidder at the sale and purchased the payment rights.

Upon SPCP's motion, the trial court added Vineyard Apartments, Shenandoah,

Heatherstone, Barrington Place Management and Barrington Place to the action as counterclaim defendants.

On April 1, 2013, SPCP filed its Amended Counterclaims alleging breach of the Pledge Agreement against Vineyards Apartments, Shenandoah, Heatherstone, Barrington Place, the Jon Trust, the Debra Trust, Barrington Management and Vineyards Management (Counts I, III, V); Accounting/Receivership against the same parties (Counts II, IV, VI); and Tortious Interference with Contract against Kohner and Vineyards Management (Count VII). SPCP requested the court enter an order enjoining the Appellants and counterclaim defendants from making any unauthorized use or diverting proceeds of the Pledge Companies other than as specified in the Pledge Agreement and to appoint a receiver and order an accounting to "account for and to keep, preserve, and protect the property rights and interests of SPCP in and to the Pledge Companies[.]"

On April 2, 2013, the trial court conducted a hearing on Appellants' Application to Compel Arbitration that was limited to disputes regarding the Pledge Agreement and SPCP's amended counterclaims. On April 5, 2013, the trial court entered an Order denying Appellants' Application. Pursuant to Appellants' request to denominate the order a judgment, the trial court entered a Judgment on May 13, 2013, denying Appellants' Application. This appeal follows.

## Standard of Review

Whether a dispute is covered by an arbitration provision is a question of law. *Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. banc 2003). This Court reviews the arbitrability of a dispute *de novo. Id.*

The party asserting the existence of a valid and enforceable contract to arbi-

trate bears the burden of proving that proposition. *Whitworth v. McBride & Son Homes, Inc.*, 344 S.W.3d 730, 737 (Mo.App. W.D.2011).

## Discussion

On appeal, Appellants argue the trial court erred in denying their Application to Compel Arbitration of SPCP's amended counterclaims because (1) SPCP agreed to arbitrate all controversies, claims or disputes arising out of or relating to the Loan Agreement, loan documents or any related agreements and (2) the claims asserted by SPCP arise out of or are related to the Loan Agreement, loan documents and/or related agreements.

In ruling on a motion to compel arbitration, the court must determine whether a valid arbitration agreement exists and, if so, whether the parties' dispute falls within the scope of the arbitration agreement. *Nitro Distribg., Inc. v. Dunn*, 194 S.W.3d 339, 345 (Mo. banc 2006). If the subject dispute is within the scope of the arbitration provision, the court must determine whether the arbitration agreement is subject to revocation under applicable contract principles. *Whitworth*, 344 S.W.3d at 736. The usual rules and canons of contract interpretation govern such determinations. *Nitro Distribg., Inc.*, 194 S.W.3d at 345.

The cardinal principle of contract interpretation is to ascertain the intention of the parties and to give effect to that intent. *Dunn*, 112 S.W.3d at 428. The terms of a contract are read as a whole to determine the intention of the parties and are given their plain, ordinary, and usual meaning. *Id.* Each term of a contract is construed to avoid rendering other terms meaningless. *Id.* A construction that attributes a reasonable meaning to all the provisions of the agreement is preferred to

one that leaves some of the provisions without function or sense. *Id.*

### Whether There is a Valid Arbitration Clause

There is not an arbitration clause within the "four corners" of the Pledge Agreement; however, the arbitration provision in the Loan Agreement is incorporated into the Pledge Agreement.

First, the Pledge Agreement defines itself as a "Loan Document" under the Loans, specifically stating "this Agreement is a 'Loan Document,' as such term is used in [the Loan Agreement] and the Whitfield Note."

The Pledge Agreement also fits squarely within the Loan Agreement's definition of "Loan Documents[.]" "Loan Documents" under the Loan Agreement includes *"any and all other documents which Borrower, Guarantor or any other party or parties* executed and delivered, or *may hereafter execute and deliver, to evidence, secure or guarantee the Obligations,* or any part thereof, as the same may from time to time be extended, amended, restated, supplemented or otherwise modified." [Emphasis added.] The Pledge Agreement states its purpose is "to secure the prompt and complete payment, observance and performance of all of the indebtedness, obligations and liabilities owing to Lender under the Whitfield Note and/or the [Loan Agreement] and any of the other 'Loan Documents,' as such term is defined in each of the Whitfield Note and/or [the Loan Agreement] ..." Further, the Pledge Agreement defines a "default" as default under the Loan Agreement, Whitfield Note or any other "Loan Document" as defined in the Loans.

Citing *Dunn,* SPCP contends it cannot be bound by the arbitration provision in the Loan Agreement because the arbitration provision is not "expressly incorporated by reference" into the Pledge Agreement. We disagree.

"Arbitration is a matter of contract, and a party cannot be required to arbitrate a dispute that it has not agreed to arbitrate." *Dunn,* 112 S.W.3d at 435–36. *Dunn* held that a guarantor who is not a signatory to a contract containing an arbitration clause is generally not bound by the arbitration clause. *Id.* at 435. *Dunn,* however, also recognized that, due to the strong federal policy in favor of arbitration, arbitration agreements are enforced against guarantors or sureties where the arbitration agreement is incorporated by reference into the guaranty or performance bond. *Id.* The *Dunn* court rejected the claim on appeal that the guarantor was bound by an arbitration agreement in the construction contract to which it was not a signatory where the guaranty simply referred to and attached the construction contract, finding that a "mere reference to the construction contract in the guaranty is insufficient to establish that Dunn bound itself to the arbitration provision of the construction contract." *Id.* at 435–436.

SPCP's position is that *Dunn* requires the specific words "incorporated by reference" be in the contract in order to accomplish such. We do not read *Dunn* so narrowly. Here, the Pledge Agreement does not provide a "mere reference" to the Loan Agreement but repeatedly references the Loans throughout the agreement and specifically defines itself as part of the Loan Agreement. Such language clearly incorporates the Loan Agreement into the Pledge Agreement. Further, the Pledge Agreement falls within the Loan Agreement's definition of a "Loan Document" which includes "any and all other documents which Borrower, Guarantor or any other party ... may hereafter execute and deliver, to evidence, secure or guarantee

the Obligations[.]" This construction of the Pledge Agreement and the Loan Agreement gives effect to the terms of both contracts and to the parties' intentions as evidenced by the plain language of the contracts.[2]

■ SPCP further contends the arbitration provision in the Loan Agreement is inapplicable to the current suit because the signatories to the Pledge Agreement were not parties to the Loan Agreement, and the provision, by its terms, limits itself to any "Dispute" which is defined as "controversy, claim or dispute *between or among the parties to this Agreement* [emphasis added], including any such controversy, claim or dispute arising out of or relating to (a) this Agreement, (b) any other Loan Document, (c) any related agreements or instruments, or (d) the transaction contemplated herein or therein[.]"

First, we note that several of the parties, namely Shenandoah, Jamestown, Willowbrook, Waterstone, and Whitfield, were all signatories to the Loans and the Pledge Agreement. Shenandoah was a borrower under the Loan Agreement[3] and is a Pledge Company under the Pledge Agreement. Upon SPCP's motion, Shenandoah was added to the suit as a counterclaim defendant and SPCP brought counterclaims against Shenandoah for breach of the Pledge Agreement and for an accounting and receivership. Jamestown, Willowbrook, Waterstone, and Whitfield were borrowers under either the Loan Agreement or the Whitfield Note and signed the Acknowledgment to the Pledge Agreement. Jamestown, Willowbrook, Waterstone and Whitfield were some of the original plaintiffs in this action and are Appellants in this appeal.

■ Furthermore, nonsignatories can enforce an arbitration provision against a signatory to an agreement in two instances:

One is when "the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided." *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir.1999) (quoting *Boyd v. Homes of Legend, Inc.*, 981 F.Supp. 1423, 1432 (M.D.Ala.1997)). Another is "when the signatory to a written agreement containing an arbitration clause 'must rely on the terms of the written agreement in asserting [its] claims' against the nonsignatory." *Id.* (quoting *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757 (11th Cir.1993)). "When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate." *Id.* (internal quotations omitted).

---

**2.** Contrary to SPCP's assertion, the identification of the Pledge Agreement as a "Loan Document" does not, by its terms, limit itself to a "cross-default" situation, ensuring only · that "a default under the Pledge Agreement would also constitute an event of default under the other Loan Documents." Notably, this case involves the converse situation described by SPCP; i.e., SPCP is maintaining there is a default under the Loan Agreement which constitutes a default under the Pledge

Agreement and serves as a basis for the current action.

**3.** Shenandoah was a named Borrower which apparently received $4.8 million of the loan funds. It is unclear from the record whether SPCP has brought an action against Shenandoah in its capacity as a borrower under the Loan Agreement. Whether such suit lies has no impact on our analysis.

*CD Partners, LLC v. Grizzle*, 424 F.3d 795, 798 (8th Cir.2005).

This case involves both circumstances. The relationship between signatories to the Loan Agreement, namely the Borrowers, and the nonsignatories, namely the Pledgors and Pledge Companies, is close. A review of the contracts reveals that the Loan Agreement was signed by Jon M. Pyzyk as Manager of the Borrower companies. The Pledge Agreement was signed by Debra J. Pyzyk in almost every conceivable capacity, including as Trustee of Pledgors the Debra Trust and the Jon Trust; President of Pledgors Vineyards Management and Barrington Place Management; President of the four Pledge Companies; President of the four named Borrowers; and President of Kohner, a manager of the Pledge Companies. Thus, the same individual, Debra J. Pyzyk, is acting on behalf of practically every signatory and nonsignatory involved. The alleged breach of the Pledge Agreement is based primarily upon the Borrowers' default on the Loans, an issue subject to the arbitration provision. The arbitration provision would be eviscerated if SPCP were permitted to litigate the merits of the alleged default of the Loans in an action on the Pledge Agreement. Furthermore, SPCP's claim of breach of the Pledge Agreement relies upon, refers to and presumes the existence of the Loans. Thus, the signatories to the Pledge Agreement who are nonsignatories to the Loans can enforce the arbitration provision contained therein.

4. SPCP also argues the Pledge Agreement is not arbitrable under the Missouri Arbitration Action because it lacks a notice of arbitration clause as required by Section 435.460 RSMo 2012. Because this case involves citizens of, property in, and transactions and operations across several states, it involves interstate commerce and falls within the purview of the Federal Arbitration Act (FAA), which does not

▮ Based on the foregoing, this Court finds the parties to the Pledge Agreement are bound by a valid, enforceable arbitration agreement.[4]

*Whether The Dispute Falls Within the Scope of the Arbitration Agreement*

▮ "Broad" arbitration clauses are those that cover all disputes arising out of a contract to arbitrate while "narrow" clauses limit arbitration to specific types of disputes. *McCarney v. Nearing, Staats, Prelogar and Jones*, 866 S.W.2d 881, 889 (Mo.App.W.D.1993).

▮ Here, the arbitration agreement is broad, requiring any "Dispute" to be determined by binding arbitration. The Loan Agreement defines "Dispute" as "any controversy, claim or dispute between or among the parties to this Agreement, including any such controversy, claim or dispute arising out of or relating to (a) this Agreement, (b) any other Loan Document, (c) any related agreements or instruments, or (d) the transaction contemplated herein or therein[.]"

The Loan Agreement, however, does contain a reservation of rights provision:

(c) *Reservations of Rights.* Nothing in this Agreement shall be deemed to . . . (ii) apply to or limit the right of Lender (A) to exercise self help remedies such as (but not limited to) setoff, or (B) to foreclose judicially or nonjudicially against any real or personal property collateral, or to exercise judicial or non-

have a notice requirement. The Section 435.460 notice of arbitration clause requirement is preempted by the FAA and cannot be applied to a contract within the coverage of the FAA to defeat the contract's arbitration provision. *Kagan v. Master Home Products Ltd.*, 193 S.W.3d 401, 407–08 (Mo.App.E.D. 2006).

judicial power of sale rights, (C) *to obtain from a court provisional or ancillary remedies such as (but not limited to) injunctive relief, writ of possession, prejudgment attachment, or the appointment of a receiver, or* (D) to pursue rights against a party to this Agreement in a third-party proceeding in any action brought against Lender in a state, federal or international court, tribunal or hearing body (including actions in specialty courts, such as bankruptcy and patent courts). *Lender may exercise the rights set forth in clauses (A) through (D), inclusive, before during or after the pendency of any arbitration proceeding brought pursuant to this Agreement....* [Emphasis added.]

 "Language excluding certain disputes from arbitration must be clear and unambiguous or unmistakably clear." *Dunn,* 112 S.W.3d at 429. "A motion to compel arbitration of a particular dispute should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* "Doubts as to arbitrability should be resolved in favor of coverage." *Id.* However, policies favoring arbitration are " 'not enough, standing alone, to extend an arbitration agreement beyond its intended scope because arbitration is a matter of contract.' " *Manfredi v. Blue Cross and Blue Shield of Kansas City,* 340 S.W.3d 126, 131 (Mo.App.W.D.2011), quoting *Kansas City Urology, P.A. v. United Healthcare Servs.,* 261 S.W.3d 7, 11 (Mo.App. W.D.2008). "Accordingly, express provisions excluding particular grievances from arbitration are enforceable." *Manfredi,* 340 S.W.3d at 131.

 Here, the reservation of rights provision specifically allows SPCP to pursue provisional or ancillary remedies from a court including, but not limited to, in-junctive relief and the appointment of a receiver. This provision allows SPCP to exercise these rights "before, during or after the pendency of any arbitration proceeding[.]" To require SPCP to arbitrate whether it may avail itself of these provisional remedies would render SPCP's reservation of these rights "before" any arbitration proceeding illusory.

In its amended counterclaim, SPCP alleges against various parties a breach of the Pledge Agreement and has requested injunctive relief, the appointment of a temporary receiver and an accounting "to account for and to keep, preserve, and protect the property rights and interest of SPCP in and to the Pledge Companies[.]" Appellants contend SPCP's counterclaims fall within the scope of the arbitration provision because they "ultimately arise from Borrowers' alleged breaches or defaults under the Loan Agreement[.]"

 While Appellants are correct that SPCP did allege an underlying breach of the Pledge Agreement and the Loan Agreement in its counterclaims, it is clear from the pleading that SPCP is seeking only ancillary remedies and not a determination as to the merits of the underlying dispute as to default. " 'Ancillary,' as used in law, is defined as 'designating or pertaining to a document, proceeding, officer or office, etc., that is subordinate to, or in aid of, another primary or principal one; as, an *ancillary* attachment, bill, or suit presupposes the existence of another principal's proceeding.' " *Am. Refractories Co. v. Combustion Controls,* 70 S.W.3d 660, 663 (Mo.App.S.D.2002), quoting *Herhalser v. Herhalser,* 401 S.W.2d 187, 193 (Mo. App.1966) (citations omitted). "[A]n 'ancillary proceeding' is one subordinate to or in aid of another primary action." *Am. Refractories Co.,* 70 S.W.3d at 663.

In this case, the injunctive relief, the appointment of a temporary receiver and the accounting sought by SPCP are ancillary to the main dispute, in that they do not affect the merits of the dispute as to default or breach. See *Am. Refractories Co.,* 70 S.W.3d at 663; *Securities and Exch. Commn. v. R.J. Allen & Associates, Inc.,* 386 F.Supp. 866, 880 (S.D.Fla.1974) (accounting deemed an ancillary remedy where it was for the purpose of aiding the court and its receiver in the exercise of their equitable functions). SPCP's counterclaims seeking ancillary remedies may proceed before, during or after the pendency of any arbitration proceeding.

Based on the foregoing, Appellants' point on appeal is denied.

### Conclusion

The trial court's Judgment denying Appellants' Application to Compel Arbitration is affirmed.

ROBERT G. DOWD, JR., P.J., and ROY L. RICHTER, J., concur.